# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5526-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

L.R.P.,

     Defendant-Appellant,

and

M.T.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF J.A.T.-P.,

     Minor.

_____

Submitted February 12, 2019 – Decided March 7, 2019

Before Judges Yannotti and Gilson.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0076-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Casey J. Woodruff, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (James J. Gross, Designated Counsel, on the brief).

PER CURIAM

L.R.P. appeals from a judgment entered by the Family Part on July 11, 2018, which terminated her parental rights to J.A.T.-P. and awarded the Division of Child Protection and Permanency (Division) guardianship of the child. We affirm.

I.

We briefly summarize the relevant facts and procedural history. The Division's involvement with L.R.P. began in January 2011. At that time, L.R.P. had two children: T.H.P. and A.R.R.-P., who were born in September 2008 and July 2010, respectively. In January 2011, the Division was informed that L.R.P. was at the welfare office, yelling and threatening to strike A.R.R.-P. L.R.P. was

eighteen years old at the time. The Division investigated the home and found that the stove burners and the oven were on because the apartment did not have heat. The Division determined, however, that the child otherwise appeared to be safe. With her mother's assistance, L.R.P. later relocated to a hotel. It appears that she later moved to an apartment.

In August 2012, the Division received a report that A.R.R.-P. was in the emergency room of a hospital and she had a high fever. Thereafter, a Division worker visited L.R.P.'s apartment and found that it was in disarray. The Division began to provide the family with various services.

The Division referred L.R.P. for a psychological evaluation. During that evaluation, L.R.P. admitted she had been abusing marijuana since she was fifteen years old and used the drug as recently as March 2013.

The Division referred L.R.P. to a substance-abuse-treatment program. She was noncompliant with the recommendation. The Division also referred L.R.P. to parenting-skills classes and individual therapy. The Division scheduled several intake appointments but L.R.P. did not attend.

In January 2014, one of the Division's workers visited L.R.P.'s home, and found that it was disorganized, "filthy," and had a foul odor. L.R.P. acknowledged she had not been attending substance-abuse-treatment programs.

The Division removed the children due to environmental neglect, and in January 2014, the trial court granted the Division's application for temporary custody of T.H.P. and A.R.R.-P. In August 2014, L.R.P. tested positive for cocaine, marijuana, and benzodiazepine.

In October 2014, L.R.P. had a substance-abuse evaluation. The evaluator recommended that L.R.P. attend an intensive, outpatient treatment program. L.R.P. attended the program for one week and then stopped attending. On November 13, 2015, the trial court entered a judgment terminating L.R.P.'s parental rights to T.H.P. and A.R.R.-P.

In January 2017, the Division received a report that L.R.P. had entered a drug-treatment program and tested positive for marijuana and cocaine. L.R.P. was seven-months pregnant at the time. Her doctor had reported that the child "was in distress" as a result of L.R.P.'s use of drugs. The Division tried to arrange a meeting with L.R.P., but was unsuccessful.

In February 2017, the Division learned that L.R.P. had given birth to J.A.T.-P. L.R.P. and the child tested positive for cocaine, and L.R.P. also tested positive for opiates. L.R.P. informed a Division worker that she had used crack cocaine on the day J.A.T.-P. was born, and that she had been using heroin twice

a week during the pregnancy. M.T. was not named on J.A.T.-P.'s birth certificate, but he confirmed he was the child's biological father.

The Division removed J.A.T.-P. and placed him in an approved resource home. In February 2017, the trial court granted the Division's application for temporary custody of J.A.T.-P. The Division arranged for L.R.P. to visit with J.A.T.-P. on two dates in March 2017, but she did not attend. The Division scheduled a meeting for March 15, 2017, to discuss a visitation schedule and arrange for services. L.R.P. did not attend the meeting. Because L.R.P. had alleged that M.T. had been abusive, the Division referred her to a domestic violence counselor. However, L.R.P. could not be admitted to a shelter while she was using drugs.

In May 2017, the trial court conducted a fact-finding hearing and found that due to her use of drugs and failure to comply with the treatment services that were offered to her, L.R.P. had abused or neglected J.A.T.-P. In November 2017, the trial court approved the Division's permanency plan of termination of L.R.P.'s parental rights, followed by adoption.

In January 2018, the Division filed its guardianship complaint. M.T. died several months later. The Division continued to provide services to L.R.P., and

J.A.T.-P. remained in the care of his resource parent. In March 2018, L.R.P. reported that she was using marijuana, heroin, and cocaine on a daily basis.

A subsequent substance-abuse evaluation recommended that L.R.P. attend a detoxification program, and the Division transported her to the program. L.R.P. refused to stay. She said she was not ready for detoxification, and would be attending another program. L.R.P. never provided the Division with proof that she attended another drug-treatment program.

While the guardianship litigation was pending, L.R.P. only visited J.A.T.-P. twice. The Division also scheduled a psychological evaluation for L.R.P. several times, but she did not appear for the scheduled evaluations. Dr. Barry Katz conducted bonding evaluations of L.R.P. and J.A.T.-P., and of J.A.T.-P. and the resource parent. Dr. Katz supported the Division's permanency plan for the termination of L.R.P.'s parental rights, followed by J.A.T.-P.'s adoption by the resource parent.

The Division considered three relatives as possible placement options. These individuals either did not respond to the Division's inquiries, or the Division ruled them out for various reasons. In addition, the Division discussed kinship legal guardianship (KLG) with the resource parent, but she was committed to adopting J.A.T.-P.

6

In July 2018, a Law Division judge conducted the guardianship trial. At the trial, the Division presented testimony from Franchesca Fernandez, the family's caseworker since 2016. Dr. Katz also testified. He was qualified as an expert in psychology and bonding. The Law Guardian supported the termination of L.R.P.'s parental rights and J.A.T.-P.'s adoption by the resource parent. L.R.P. did not call any witnesses or introduce any evidence.

On July 11, 2018, the judge rendered an oral decision. The judge found that the Division had established with clear and convincing evidence the four criteria for termination of parental rights in N.J.S.A. 30:4C-15.1(a). The court filed a judgment, which terminated L.R.P. and M.T.'s parental rights to J.A.T.-P. and awarded guardianship of J.A.T.-P. to the Division. This appeal followed.

II.

On appeal, L.R.P. argues that the Division failed to present sufficient credible evidence to establish the four criteria for termination of her parental rights.

Initially, we note that the scope of our review in an appeal from an order terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007) (citing In re Guardianship of J.N.H., 172 N.J. 440, 472 (2002)). "Appellate courts must defer to a trial judge's findings of fact

if supported by adequate, substantial, and credible evidence in the record." Ibid. (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)).

The Division may initiate a petition to terminate parental rights in the "best interests of the child" and the court may grant the petition if the Division establishes the criteria codified in N.J.S.A. 30:4C-15.1(a) with clear and convincing evidence. N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 166-68 (2010). "The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." Id. at 166 (quoting N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 506–07 (2004)).

A. Prong One

L.R.P. argues that the judge erred by finding that the Division established prong one of the best interests standard. Prong one requires the Division to prove that "[t]he child's safety, health, or development has been or will continue to be endangered by the parental relationship." N.J.S.A. 30:4C-15.1(a)(1).

On appeal, L.R.P. argues that the Division removed J.A.T.-P. because her parental rights to her other two children had been involuntarily terminated. She contends the Division presented no additional evidence to show that J.A.T.-P.

suffered any "actual abuse or neglect" other than her use of drugs during her pregnancy. She contends the Division did not present any evidence showing that her pre-natal drug-use had any "ill effects on the child."

There is, however, sufficient credible evidence in the record to support the judge's finding that J.A.T.-P.'s "safety, health, or development has been or will continue to be endangered by" his relationship with L.R.P. See N.J.S.A. 30:4C-15.1(a)(1). The judge properly considered the fact that L.R.P.'s parental rights to her other two children had been terminated due in large part to her persistent substance abuse and failure to provide the children with a safe and stable home. See J. v. M., 157 N.J. Super. 478, 493 (App. Div. 1978) (noting that a parent's past treatment of a child and the quality of care to other children in his or her custody can be considered as evidence of parental fitness or unfitness). This was not the sole basis for the judge's findings on prong one.

As we have explained, the record shows that L.R.P. has been abusing drugs since she was fifteen years old. She admitted that she used heroin twice a week during her pregnancy with J.A.T.-P. and that she had used cocaine the day he was born. The Division removed the child from L.R.P.'s care because her persistent abuse of drugs posed a substantial risk of harm to the child.

Furthermore, the child could not be returned to L.R.P.'s custody because she continued to use drugs, and she failed to address her substance abuse in treatment, despite being given numerous opportunities to do so. In addition, L.R.P. failed to maintain consistent visitation with J.A.T.-P. while he was in the Division's custody and placed with the resource parent. She only visited him twice.

Our Supreme Court has observed "the attention and concern of a caring family is 'the most precious of all resources.'" In re Guardianship of DMH, 161 N.J. 365, 379 (1999) (quoting N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 613 (1986)). The Court stated that, "[a] parent's withdrawal of . . . solicitude, nurture, and care for an extended period of time is in itself a harm that endangers the health and development of the child." Ibid. (citing In re Guardianship of K.H.O., 161 N.J. 337, 352-54 (1999)).

By failing to address her substance abuse, engage in visitation, and take other steps required for reunification, L.R.P. withdrew her solicitude, nurture, and care from J.A.T.-P. for an extended period of time. See ibid. (citing K.H.O., 161 N.J. at 352-54). The record supports the trial court's finding that the Division clearly and convincingly established that J.A.T.-P. was harmed by his

10

relationship with L.R.P. We therefore reject L.R.P.'s contention that the Division failed to establish prong one of the best interests standard.

B. Prong Two

Prong two requires the Division to show that "[t]he parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm." N.J.S.A. 30:4C-15.1(a)(2). In addressing this prong, the court must focus on whether the parent has overcome the harms that endanger the child and whether the parent is able to prevent further harm from the parental relationship. K.H.O., 161 N.J. at 348-49.

On appeal, L.R.P. argues that there is insufficient evidence to support the judge's finding that she is unable or unwilling to eliminate the harm to the child resulting from her relationship with him. She contends her visits with the child demonstrate that she could maintain a healthy relationship with him.

L.R.P. further argues that she is different from the person depicted in the guardianship litigation involving her other two children. She claims she acted appropriately during her visits with the child, and her parental rights should not be terminated simply because she cannot be the child's primary caregiver.

We conclude, however, that there is sufficient credible evidence in the record to support the trial judge's finding that the Division established prong two with clear and convincing evidence. As stated previously, L.R.P. has refused to address her long-standing substance abuse problem. The Division began to refer L.R.P. for substance-abuse treatment in 2013. Since that time, L.R.P. failed to attend several substance-abuse-treatment programs, and she continued to test positive for the use of drugs.

As we have explained, L.R.P.'s parental rights to T.H.P. and A.R.R.-P. were terminated in large part due to her continued abuse of drugs. Even so, she continued to abuse drugs. She admitted using heroin twice a week during her pregnancy with J.A.T.-P., and she admitted that she used cocaine on the day he was born.

At her March 2018 substance-abuse evaluation, L.R.P. acknowledged that she was still using heroin, cocaine and marijuana. She refused to attend a detoxification program, even though the Division had transported her to the program. She claimed she was going to attend another program, but never provided the Division with any evidence that she did so.

As noted, L.R.P. claims she acted appropriately during her visits with J.A.T.-P. The record shows, however, that L.R.P. did not visit the child for

almost a year after he was removed and placed in foster care. Moreover, the record shows that L.R.P. only visited J.A.T.-P. twice during the guardianship litigation. The record supports the judge's finding that L.R.P. is unable or unwilling to eliminate the harm to the child resulting from his relationship with her.

The record also supports the judge's determination that a delay in a permanent placement will add to the harm. In his decision, the judge noted that L.R.P. is unfit to parent and will not be able to do so in the foreseeable future. The judge found that the child requires permanency, which the resource parent will be capable of providing. These findings are supported by sufficient credible evidence in the record.

C. <u>Prong Three</u>

Prong three of the best interests standard requires the Division to establish that it "made reasonable efforts . . . to help the parent correct the circumstances which led to the child's placement outside the home." N.J.S.A. 30:4C-15.1(a)(3). The reasonableness of the Division's efforts is not measured by whether its efforts were successful in bringing about reunification of the parent and child. <u>DMH</u>, 161 N.J. at 393. Rather, the Division's "efforts must be

assessed against the standard of adequacy in light of all the circumstances of a given case." Ibid.

On appeal, L.R.P. does not argue that the Division failed to make "reasonable efforts" to assist her in addressing the circumstances that led to J.A.T.-P.'s removal from her care. Instead, L.R.P. argues that the Division failed to consider alternatives to the termination of her parental rights. She contends the Division only presented evidence showing that the resource parent "wish[es] to adopt J.A.T.-P.," and it failed to consider KLG as an alternative option. We disagree.

Here, the judge found that the Division had established that the resource parent is committed to adopting J.A.T.-P. At the trial, Fernandez testified that she discussed KLG with the resource parent, and after that discussion, the resource parent confirmed that she was committed to adopting the child. Thus, there is sufficient credible evidence to support the judge's finding that the resource parent expressed an "unequivocal desire to adopt" J.A.T.-P. Because adoption is feasible and likely, KLG is not a defense to the termination of parental rights. See P.P., 180 N.J. at 512-13.

D. Prong Four

To establish prong four, the Division must present clear and convincing evidence showing that "[t]ermination of parental rights will not do more harm than good." N.J.S.A. 30:4C-15.1(a)(4). "[T]he fourth prong of the best interests standard cannot require a showing that no harm will befall the child as a result of the severing of biological ties." K.H.O., 161 N.J. at 355.

Instead, the court must balance the relationships of the biological parent and the child, "and determine whether the child will suffer greater harm from terminating the child's ties with" his or her biological parent than from permanent disruption of the child's relationship with a resource parent. N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 435 (App. Div. 2001) (citing K.H.O., 161 N.J. at 355).

On appeal, L.R.P. argues that the Division failed to establish that the termination of her parental rights will not do more harm than good. She contends J.A.T.-P. has not been with his resource parent for a sufficient period of time to justify the termination of her parental rights. She also argues that Dr. Katz's analysis is not supported by the facts of record or sound analysis. Again, we disagree.

15

As we noted previously, Dr. Katz performed evaluations of the bonds between J.A.T.-P. and his resource parent, and between J.A.T.-P. and L.R.P. At trial, Dr. Katz testified that the bond between J.A.T.-P. and his resource parent was that of a "primary nurturing figure," and that the resource parent was the "key figure" in the child's development. Dr. Katz opined that J.A.T.-P. would suffer harm if his relationship with his resource parent was severed.

Dr. Katz also testified that J.A.T.-P. would experience a negative reaction if removed from the resource parent, and that L.R.P. would not be able to mitigate that harm. Dr. Katz noted that L.R.P.'s abuse of "very severe addictive substances" has affected her ability to function and "caused parenting deficits." He pointed out that L.R.P. showed "no indications of sobriety."

Dr. Katz further testified that the bonding evaluation of J.A.T.-P. and L.R.P. showed "that she was a friendly figure" but he did not "seek[] her out, . . . call her Momma, . . . address her, . . . [or] respond to direction from her." He opined that no harm would result if the child's relationship with L.R.P. were severed. He also stated that if any harm were to occur, the resource parent would be equipped to mitigate that harm.

16

On cross-examination, Dr. Katz stated that L.R.P. acted appropriately during the bonding evaluation. As noted earlier, however, he stated that the child's bond with the resource parent was that of a "primary nurturing figure."

The judge found Dr. Katz's testimony to be knowledgeable, informative, and supported by the record. The judge determined that Dr. Katz was a credible witness. The judge concluded the Division had proven by clear and convincing evidence that termination of L.R.P.'s parental rights would not do more harm than good. We are convinced there is sufficient credible evidence in the record to support these findings.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5526-17T1